1  Mark Aussieker
2  8830 Olive Ranch Lane
   Fair Oaks, CA 95628
3  Phone: 916-705-8006
   aussieker1@gmail.com
4
   *in pro per*



FILED

MAR 11 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
               DEPUTY CLERK

5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF CALIFORNIA

7

8  MARK AUSSIEKER,                        No.

9            Plaintiff,              **2:20** CV **542** KJM DB PS

10     v.                           **COMPLAINT FOR DAMAGES**
                                    Trial by Jury not requested
11 BANKROLL CAPITAL, INC, Narin
   Charanvattanakit Defendant(s)
12

13 :

14
15 1.    Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to enforce the

16 consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a

17 federal statute enacted in 1991 in response to widespread public outrage about the proliferation of

18 intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745

19 (2012).

20 2.    The Defendants have placed telemarketing calls to a telephone number Mr. Aussieker owned

21 without consent.

22 3.    This Complaint also relates to the Defendants making telemarketing calls to individuals in the

23 absence of any "do not call" policy or training, as well as making such calls to individuals who

24 previously indicated that they did not want to receive telemarketing calls when they registered their

25 number on the national do not call registry.

26                              **PARTIES**

27 4.    Plaintiff Mark Aussieker is an individual and resident of the state of California, and this

28

1

District.

5.        Defendant BANKROLL CAPITAL, INC. ("BANKROLL") is a California corporation. Defendant BANKROLL CAPITAL, INC is a "person" as defined by 47 US.C. § 153 (39).

6.        Defendant Narin Charanvattanakit  ("Charan") is a natural person and resident of California.

## Jurisdiction & Venue

7.        The Court has federal question subject matter jurisdiction over these TCPA claims.  Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740 (2012).

8.        Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

9.        Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

10.       This Court has personal jurisdiction over the parties because Defendants systematically and continually have conducted business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and his claims arose out of his contact with Defendants from California.

## TCPA Background

11.       TCPA Background In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.       The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

13.       The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14.     A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

15.     The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. Id.

16.     Any person whose receives any phone in violation 47 U.S.C. § 227(b)(1) (A) can sue the violator and seek statutory damages. 47 U.S.C §227(b)(3)(B). This is commonly refered to as the auto dialer statue or ATDS.

17.     47 U.S.C. § 227(b)(1) (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt  owed to or guaranteed by the federal government."

18.     Automatic Telephone Dialing System, which the statute defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 USC 227(a)(1). Notwithstanding this limited definition, the Ninth Circuit ruled in Marks v. Crunch San Diego, LLC that an ATDS means more than what the statute says. The question is whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a stored list."

19.     The Court answered in the affirmative merely that if the dialer dials numbers from a stored list, it is considered an ATDS. Marks decision is now the law of the land in the 9th circuit as of February 19th 2019 after the parties settled.

20.     All a plaintiff needs to show is that a call or text message was made using an auto dialer to a number assigned to cellular service, or that the calling party was charged for the call.  In this case, plaintiff received calls sent to his cellular phone.

21.     In Sengenberger v. Credit Control Services, Inc1., the court held that "intentionally" making phone calls that violated the TCPA was sufficient to warrant treble damages because "although neither the TCPA nor the FCC regulations define the terms 'willfully or knowingly'...courts have generally interpreted willfulness to imply only that an action was intentional. Further, Sengenberger noted that while the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation."

## Factual Allegations

22.     Plaintiff MARK AUSSIEKER's phone number ending in 8006 is a cellular phone.

23.     Plaintiff MARK AUSSIEKER's phone number ending in 8006 was added to the Do Not Call list in February 2003.  SEE EXHIBIT A

24.     Plaintiff has maintained the same cell phone ending in 8006 continuously since 2002.

25.     PLAINTIFF does not have a "landline" and primarily uses his cell phone as his home phone. He is a residential subscriber.   He pays the phone bill with personal funds.

26.      CHARAN and Mark Mendoza were officers  of Capital Alliance Group when PLAINTIFF sued Capital Alliance Group for TCPA violations in 2018.

27.     One of Defendants strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

---

[1] SENGENBERGER v. CREDIT CONTROL SERVICES, INC. (N.D.Ill. 5-5-2010)

4

28.     Plaintiff compiled a chart of the calls sent to his cell phone.

| DATE | HR:MIN:SEC | TYPE | Caller ID | ATDS | DNC |
|---|---|---|---|---|---|
| 09/05/2019 | 7:55:24 | CALL | 949-799-3507 | Yes | Yes |
| 9/9/2019 | 15:29:00 | Text message | 949-799-3507 | Yes | Yes |
| 12/20/2019 | 7:20:19 | CALL | 661-475-5140 | Yes | Yes |
| 12/20/2019 | 7:20:18 | CALL | 323-613-8084 | Yes | Yes |
| 12/20/2019 | 7:17:33 | CALL | 661-475-5140 | Yes | Yes |
| 12/20/2019 | 7:17:19 | CALL | 323-613-8084 | Yes | Yes |
| 12/30/2019 | 7:58:38 | CALL | 341-999-4490 | Yes | Yes |
| 12/30/2019 | 7:58:16 | CALL | 559-626-2062 | Yes | Yes |
| 12/30/2019 | 7:55:22 | CALL | 559-626-2062 | Yes | Yes |
| 12/30/2019 | 7:55:18 | CALL | 341-999-4490 | Yes | Yes |
| 1/10/2020 | 14:21:25 | CALL | 949-518-1433 | Yes | Yes |
| 1/10/2020 | 14:24:00 | Text message | 949-518-1433 | Yes | Yes |

29.     DEFENDANTS caused 12 telephone calls to be made to Plaintiffs cell phone number that is on the do not call registry.

30.     9 of the phone calls were before 8am, in violation of

31.     DEFENDANTS willfully and knowingly made the phones calls.

32.     Upon information and belief the defendant used an ATDS, as evidenced by the pattern of the calls that formed 12/20/19 and 12/20/19.  12/20/19 and 12/20/19, plaintiff received 8 phone calls with the purported caller id of 341-999-4490, 559-626-2062, 661-475-5140 and 323-613-8084.  When plaintiff called each of the numbers back , a voicemail message plays:

> "Hey, you've reached the desk of Jennie in the Credit department, if you got my message regarding funding for your business, press one to be connected to me directly, if you are no longer interested in funding for your business, go ahead and press 2 and I will close out your file today, thanks for calling and have a great day."

33.     Upon information and belief the defendant used an ATDS, as evidenced by the pattern of the calls that were received on 12/20/19. The 1st call was sent on 12/20/2019 at 7:17:19      from 323-613-8084.  A second call came in at 7:17:33 from 661-475-5140.  A 3rd call came at 7:20:18 from 323-613-8084 and a 4th call came at 7:20:19 from  661-475-5140.  Each of the calls directed back to the voicemail

for Jennie. It appears Jennie was using a sophisticated dialing platform that would alternate the spoofed caller id and place the calls in rapid succession. The 3rd and 4th calls were placed 1 second apart which is impossible to do without an automated dialer. The 1st and 2nd calls came in $14^2$ seconds apart which itself is a violation the Telemarketing sales rule for abandoning the call. The calls placed together in rapid success indicate a sophisticated dialing platform where the calls were not manually dialed since each of the calls repeated at a 3 minutes interval and then came in rapidly from the same person. These calls were made willfully or knowingly. They were telemarketing calls since they sought to promote Defendants loan business and related services.

34.     Upon information and belief the defendant used an ATDS, as evidenced by the pattern of the calls that were received on 12/30/2019. The 1st call was sent on 12/30/2019at 7:55:18 from 341-999-4490. A second call came in at 7:55:22 f rom 559-626-2062. A 3rd call came at 7:58:16 from 559-626-2062 and a 4th call came at 7:58:38 from 341-999-4490. Each of the calls directed back to the voicemail for Jennie. It appears Jennie was using a sophisticated dialing platform that would alternate the spoofed caller id and place the calls in rapid succession. The 1st and 2nd calls came in 4 seconds[3] which itself is a violation the Telemarketing sales rule for abandoning call. The calls placed together in rapid success indicate a sophisticated dialing platform where the calls were not manually dialed since the calls were 3 minutes apart and then came in rapidly from the same person. These calls were made willfully or knowingly. They were telemarketing calls since they sought to promote Defendants loan business and related services.

35.     The pre-recorded voicemail directed callers to "press one to be connected to an operator" is indicative of a call back scheme. It is reasonable to infer that the call back scheme was made with an ATDS since the calls were made from 4 different caller ids, each promoting the same message.

36.     To place the 12/20/19 and 12/30/19 calls, a sophisticated computer dialing equipment that allowed a campaign to automatically call a party and appear like two different phone numbers were sending the coordinated campaign is indicative of an ATDS.

---

[2] Telemarketing sales rule § 310.4(b)(1)(iv) prohibits abandoning a call before 15 seconds.
[3] Ibid

37.      4 unique caller id's were used in the 12/20/19 and 12/30/19 campaign and each of those calls were spaced almost exactly 3 minutes apart. This is indicative of a CRM database where customers are set up to be contacted at a pre-determined interval. This is indicative of an ATDS since there is a database entry for each potential customer that has a unique id those increments sequentially by 1 (as most databases do). Thus, the mechanism the defendant used to store the customer names and their numbers to be called is using a sequential number generator. Essentially any relational database does this. In the alternative, the act of a customer receiving a phone call because a computer was programmed to call that number at a pre determined interval is indicative of an auto dialer.

38.      The phone call on 09/05/2019 was answered by Plaintiff. He observed 949-799-3507 as the caller id. He said hello and after hearing dead air, perhaps 2 to 3 seconds before Jennie came onto the line. The dead air is indicative of an auto dialer. This calls were made willfully or knowingly. This was a telemarketing calls since they sought to promote Defendants loan business and related services.

39.      Plaintiff received an email from Jennie and confirmed the call was made on behalf of Bankroll and that Jennie worked for Bankroll.

40.      The phone call on 949-799-3507 was a text message Plaintiff. Plaintiff observed 949-799-3507 as the caller id. This was a telemarketing calls since it sought to promote Defendants loan business and related services. This was made with an auto dialer since it was sent from the same number as previously sent from. Plaintiff alleges that the previous call from 949-799-3507 was made with an auto dialer, meaning any subsequent calls from the same phone number were made from a phone system that had the capacity to make ATDS calls.

41.      On 1/10/2020, plaintiff received a call and a text message from 949-518-1433, later confirmed to be Paul of Bankroll. Plaintiff questioned the legitimacy of Bankroll and asked Paul for a photo of his desk. Paul emailed a photo to plaintiff where the plaintiff replied there were no phones on the desk. Paul emailed plaintiff that Bankroll uses "Logitek headsets and Fastcall on salesforce, so its

7

done over the computer".  Fastcall is a dialing platform.  A fastcall training video[4] shows how this interface can be used to send bulk SMS messages and  phone calls from a stored list. *Marks v. Crunch San Diego LLC* expanded the Telephone Consumer Protection Act to cover any dialer that calls from a stored list of numbers "automatically."   The demonstration video shows that fastcall is capable of dialing and sending SMS messages from a stored list and thefore an autodialer.

42.      Defendants leveraged the economic benefit of an automatic dialer at Plaintiffs expense. The calls also had a delay before a pre-recorded message played which is also indicative that an ATDS was used.

43.      Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

44.      During all relevant times, Defendant did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing  pursuant to 47 U.S.C. § 227(b)(1)(A).

45.      Plaintiff declares that he had never heard BANKROLL, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendant or consented to receive calls from Defendant. Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendants, nor had he ever previously purchased any kind of product or service

46.      Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's loan services.

47.      The only requirement to enforce the TCPA is the indentify of the party responsible for the calls.

48.      Mr. Aussieker's concrete injury as it relates to the Spokeo decision is loss of productivity for answering the call, decreased battery life,  the nuisance of receiving a telephone call and having to wait for the other party to pick up the phone, defendants bothering him with unrequested solicitations. Plaintiff's aggravation of receiving an unsolicited solicitation after indicating his desire to not receive

---

[4] https://fastcall.com/training/users/core/dial-sms-by-list/

1    solicitations is traceable to Defendants conduct.

2

3

4
### BANKROLL CAPITAL, INC, Narin Charanvattanakit INVOLEVEMENT AND KNOWLEDGE

5    49.    At all times relevant to the claims alleged herein, CHARAN was the corporate officer and

6    executive in charge of BANKROLL CAPITAL, INC. Each and every call was placed on behalf of the

7    corporate entity owned by Charan  .

8    50.    CHARAN was aware that automated calls were being placed on behalf BANKROLL and

9    himself en masse to people, including Plaintiff.   Plaintiff has already sued Capital Alliance Group and

10   obtained a judgment against Capital Aliance Group.  Plaintiff has already sued American Direct Funding

11   wherein Mark Mendoza is listed as a co-owner of Capital Aliance Group.  Now, BANKROLL has

12   violated the TCPA and its owner has been subject to numerous lawsuits.

13
     51.    Plaintiff received the exact same unsolicited calls that was complained about in Aussieker v.

14   Capital Aliance Group and AUSSIEKER V American Direct Funding.

15

16   52.    CHARAN had a duty to investigate the claims. Charan's past robocalling experience followed

17   him to his new company and appears to be personally involved. In the alternative, CHARAN appears to

18   be willfully ignorant of the robo calling.  Charan reasonably should have known or consciously avoided

19   knowing that his employees were violating the TCPA and Charan failed to take steps within his power to

20   require complaint with the TCPA

21   53.    As the corporation's senior-most executive, CHARAN had the power to refrain from using

22   abusive robocalling and sending out unsolicited texts.   CHARAN oversaw Capital Aliance Group

23   through 12 TCPA lawsuits in Federal court.

24
     54.    As these corporation's, senior-most executive, CHARAN had the power to fire the managers,

25   affiliates, agents, and employees (if any) taking part of the day-to-day operations of these illegal

26   robocalling operations. Despite this knowledge of illegal telemarketing, CHARAN continued to use the

27   services which resulted in the Plaintiff being called additional times on his behalf and at his direction.

28

55.     If the corporate officers/shareholders were personally involved in the illegal activity they are personally liable because they did the act themselves.  See Texas v. AmBlastfax[5] "Neither the TCPA nor the common law requires knowing or willful violations of the TCPA as a prerequisite to officer liability[6],""Direct participation or authorization is sufficient[7]."   CHARAN directly participated and authorized the calling or consciously avoided

CAUSES OF ACTION

## COUNT 1

**Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(c)(5)** – Telemarketing Solicitations to National Do Not Call Registrants

56.     Defendant placed 12 telemarketing calls to the Plaintiff.

57.     Defendant did so despite the fact that the Plaintiff previously listed his telephone on the national do not call registry, which makes the calls violative of 47 C.F.R. §64.1200(c)(2).

58.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list which is a violation of 47 C.F.R. §64.1200(c)(2).

59.     Defendant placed 9 calls bwhich is a violation of 47 C.F.R. §64.1200(c)(1).

60.     Accordingly, Plaintiff is entitled to an award of $500 in statutory damages for each violative telephone call pursuant to 47 U.S.C. § 227(c)(5).   Defendant violated multiple regulations  promulgated under 47 U.S.C. § 227(c)(5)(B).

61.     Plaintiff s entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5)(C).

## COUNT 2

---

[5] Texas v. American Blast Fax, Inc., 159 F. Supp. 2d 936 (W.D. Tex. 2001)
[6] *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC Memorandum and Opinion*
[7] ibid

**Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(b)(1)(A)(iii)** – Auto Dialer

62.     Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

63.     Defendant's own conduct (by placing a Call to Plaintiff's telephone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation. In the alternative, Defendant's own conduct (by placing a Call to Plaintiff's telephone which played a pre-recorded message, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii)

64.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against BANKROLL CAPITAL, INC, Narin Charanvattanakit for the following:

65.     Injunctive relief prohibiting such violations of the TCPA by Defendants in the future.

66.     For an order finding for plaintiff in all counts.

67.     For an order finding the defendant knowingly and willfully violated TCPA

68.     An award of $500 per call for the 1st 12 calls which amounts to $6,000 in statutory damages as prescribed under 47 U.S.C. § 227(c)(5)(B).   This amount be tripled to $18,000 as prescribed under 47 U.S.C. § 227(c)(5)(C).

69.     An award of $500 per call for the 1st 12 calls which amounts to $6,000 in statutory damages as prescribed under 47 U.S.C. § 227(b)(3)(B) This amount be tripled to $18,000 as prescribe under 47 U.S.C. § 227(b)(3)(C)

70.     TCPA intentional violations jointly and severally against the corporation and

11

1    individual for the 12 calls.

2    71.        Any other relief the court deems proper.

3    3.

4

5

6

7    Respectfully Submitted this 10th Day of  March, 2020.

8

9

10   Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to
     the best of my knowledge, information, and belief that this complaint: (1) is not being presented
11   for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the
     cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending,
12   modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if
     specifically so identified, will likely have evidentiary support after a reasonable opportunity for
13   further investigation or discovery; and (4) the complaint otherwise complies with the
     requirements of Rule 11.I agree to provide the Clerk's Office with any changes to my address
14   where case-related papers may be served. I understand that my failure to keep a current address
     on file with the Clerk's Office may result in the dismissal of my case.
15   Date of signing: 10th Day of  March, 2020.
     Signature of Plaintiff
16
     _____
17   Printed Name of Plaintiff _Mark Aussieker_____
18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A



National Do Not Call Registry - Your Registration Is Confirmed

Verify@donotcall.gov

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 9006 on June 29, 2003. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to enquiries.